Good morning ladies and gentlemen Judge Rovner will be joining us by video. Judge Rovner. Good morning. The first case this morning is the United States v. Brazier et al. Ms. Newen. Good morning, may it please the court. I represent Mr. Mzenbe, my colleague Vanessa Eisenman, represents Mr. Fields, and Corinne Smith represents Mr. Brazier. I'll be addressing the issues related to Mr. Mzenbe's and Mr. Fields' 924C convictions, and then Ms. Smith will address the restitution issue which Mr. Fields and Mr. Mzenbe both join, and then she'll also address the bodily injury enhancement which only Mr. Brazier challenges. On the 924C convictions, a single concession by the government can and should resolve this entire appeal. The government concedes... May I start you off? Yes please. I want to ask you if you would agree we should put off our decision in these appeals until the Supreme Court decides Damia. Not necessarily, Your Honor. There's precedent for this court to go ahead and decide this case regardless of when and how even though Damia had already been rescheduled for re-argument, the court went ahead and issued its decision in Jackson, and Damia won't necessarily decide the issue in this appeal. It considers a different statute, and it also arises in the civil immigration context, not the criminal context. But holding this case is certainly a reasonable option, too, and if the court opts to go that route, we would simply request an opportunity to submit supplemental briefs once Damia is decided. So that on top of... If the court upholds its residual clause cases, Mr. Fields and Mr. Mzenbe's section 924C convictions should be reversed. If the 924C convictions disappear, then the court does not need to address the other issues that we've raised in our briefs. But in the event the court does reach those issues, I'd like to briefly address the narrow disagreements that remain on those issues. Turning first to the Dean error, and the basic issue is whether the district court erred in ignoring the 924C sentences when it sent the sentences for the predicate counts. Under Dean, that's no longer correct. So some sort of remand is appropriate, and the only dispute now is which type of remand the court should issue. Should it be a full remand for resentencing or a limited remand? And we believe a full remand is appropriate. In the court's cases since Dean, this court has ordered resentencing when it's clear that the district court felt bound by this court's Roberson decision, and the government concedes that that's the case here. The court also orders resentencing when the sentences for the predicate counts fall at the bottom of the guidelines range. That's also the case here. Mr. Mazzambi was sentenced at the bottom half of the guidelines range the district court calculated for him, and Mr. Fields was sentenced below the guidelines range that was applicable to him at sentencing. Ms. Smith, do you know if anybody has told Congress that the federal courts are now having serious debates about whether kidnapping, murder, and robbery are crimes of violence? I am not aware if that message has made it to Congress specifically. There is a presumption that Congress does follow what the courts are doing. The court and... Where did that presumption come from? It's just this, this is, I don't necessarily disagree with your technical legal points, but this is an extraordinary case given the facts. The extremely violent abuse of Mr. Harris and the idea that we're having this debate about whether kidnapping or submitting a ransom demand was a crime of violence is just, I will just tell you, strikes me as extraordinary. The facts are extraordinary, Your Honor. I will agree with that, but the court applies a categorical approach when it considers whether a crime qualifies as a crime of violence, both under 924 C and under 16 B, and this court held in Jenkins that kidnapping, at least under the Elements Clause, is not a crime of violence. The features that the court held made the ACCA's residual clause unconstitutional also apply in the 924 C context, and because the categorical approach is the standard that the Supreme Court has instructed this court to apply, the 924 C cannot trigger that conviction. Turning to the Elaine issue. With respect to the Elaine error, your position is that because the jury could not know who fired the gun, the jury would have to rely on accomplice liability to hold either Mr. or Ms. M.B. or Mr. Fields culpable under 924 C for the discharge of a firearm, right? That's correct. That in turn requires the government to show that both of them had advanced knowledge that a firearm would be discharged. Yes, that that's correct. Accomplice liability requires specific intent, and under this court's Armour decision, for at least for at least a 924 C offense, that means that there has to be advanced knowledge of all of the elements of the offense, including the discharge element. So the jury... Not just a likely risk that it will be discharged or brandished? No, under the Supreme Court's decision in Rosemond, the court articulated advanced knowledge requirement for accomplice liability instructions in the 924 C context. And Rosemond involved carrying? Rosemond also... The court in Rosemond focused on the use of a firearm, and it remanded for the lower courts to consider the 924 C sentencing elements, so use, brandishing, discharge, but the Rosemond decision itself focused on carrying. This court's Armour decision then extended that analysis to the sentencing enhancement elements, brandishing, discharge, and under that case, the advanced knowledge requirement not only has to go to the use element, but also has to go to the discharge element. So here, that court... Allegedly, the, you know, the gun was destroyed accidentally. That's correct. The government conceded in Mr. Mazembe's trial that the shooting was unintentional. So there's really no evidence here that would support a verdict even under the correct instructions. Now, I'll emphasize lastly, that the court doesn't need to reach the Elaine issue if it vacates the 924 C conviction, or it doesn't need to reach the issue if it issues a remand under Dean. If the court has no further questions, we request that the court vacate the 924 C convictions. Mr. Fields has requested that the court issue a limited remand with instructions solely to vacate the 10-year sentence. Why on earth should we do that? Well, Your Honor, here, the unique sentencing record in both defendants' cases, and I'd like to point out that Mr. Mazembe would like to join this request. I thought you wanted a full remand. That is correct. That is what... Do you want a full remand, or do you want a limited remand, or just vacate the 10-year sentences? Yeah, I'm happy to clarify as much as I can, Your Honor. Mr. Mazembe would like to join Mr. Fields' request, and that is different from what is in his brief. Yes, it is. My client has decided not to waive the attorney-client privilege. I will say that I met with him yesterday in South Bend, and he has indicated that he'd now like to join Mr. Fields' request. And the sentencing records are very similar for the two defendants. The sentencing records show that because of the Dean error in both cases, the district court ignored the 924C sentence when setting the sentence for the other counts. So the district court has effectively already told both defendants what sentences they would receive if the 924C convictions disappeared. I will now turn it over to Ms. Smith to address the restitution issue, which Mr. Fields and Mr. Mazembe also joined. I assume Smith and Mazembe, well, do they join the allocation issue? No, they do not. Only whether a restitution is appropriate. Thank you. Thank you. Thank you. May it please the court, Corinne Smith on behalf of Ivan Brazier. District Court committed three distinct legal errors as to Mr. Brazier. I'd like to begin with the sentencing enhancement error. The district court erred in applying a four-level enhancement for a victim having sustained permanent or life-threatening bodily injury, and it did so based on a misinterpretation of the guideline. The district court began by saying it could not conclude on the record before it that the injury was permanent, but then it said it didn't have to conclude that because the injury was life-threatening, and it decided that... I'm afraid there's a few second delay from where I am. But, look, given that, you know, Mr. Harris was shot, there was so much blood that it was, you know, on the floors and the walls, then the defendants just drop him in some unfamiliar alley somewhere. Why was it clear error for Judge Miller to conclude that his injuries were life-threatening? I mean, if that passerby hadn't been there, the man might have easily bled to death. I'll answer your question directly, Your Honor, with the caveat that we don't think clear error applies here. We think this court's standard of review is de novo. If this court disagrees with us on that, this court should not find that there was no clear error because this court reviews factual findings for clear error, and the district court engaged in no factual inquiry and made no factual findings in its determination that this enhancement applied. Rather, the district court looked only to the language of the guideline, which says, in the case of kidnapping, life-threatening injury is encompassed by maltreatment to a life-threatening degree, e.g. by denial of food or medical care. And the district court said... Well, apart from the nature of the injury itself, the fact that the defendants denied him medical care during his captivity and dropped him in this unfamiliar alley, would that establish maltreatment to a life-threatening degree, as the guideline definition suggests, and thus would warrant the enhancement? Well, the district court didn't find that, Your Honor. The district court didn't find that what happened to Mr. Harris amounted, as a factual matter, to maltreatment to a life-threatening degree. The district court looked only to the example the guideline provides, which is denial of medical care, and it said, Mr. Brazier could have gotten the victim medical care and didn't, so I think that conduct places this case within the scope of the enhancement. And that's a problem, Your Honor, because the district court didn't engage in a factual inquiry to determine whether this really amounted to maltreatment to a life-threatening degree. That means that on the district court's reading, any time there's a denial of medical care, it is sufficient for this enhancement to apply. For a cut, scratched finger? Precisely, Your Honor. You think that's what Judge Miller meant? I think that if Judge Miller's reasoning is applied to a scratched finger and a denial of medical care, then this enhancement would apply, and that's exactly the problem. You really think that's what he thought? I think that's exactly the problem with his reasoning, Your Honor. I'm not sure he was considering that, but... You take the position that if we were to remand on this issue, the record should be limited to the record established in Mr. Brazier's sentencing and could not take account the later evidence of how permanent the injury to Mr. Harris was? I think this court should remand on the basis only of the record that was before the district court when it made this determination. I think on remand, the government would be able to bring in evidence that was not before the district court at Mr. Brazier's sentencing, could bring in evidence that the injury was permanent, and then Mr. Brazier would be entitled to an opportunity to contest that evidence. Now the government... I'm a little confused here. Do you want a full remand, or do you want a limited remand? We would like this court just to vacate the four-level enhancement for permanent or bodily injury with instructions to... It would be so helpful if you could just say, do you want a full remand, or do you want a partial remand? What is it that you want, a limited remand or a full remand? We think there should be a full re-sentencing after this enhancement is vacated. A full remand was the question. I'm sorry, I might not be understanding. We'd like a remand for re-sentencing. Well, answer Judge Rovner's question is really an issue. We would like a full re-sentencing on remand. Remand or re-sentencing? Re-sentencing, Your Honor. Is it correct that on this issue of serious versus life-threatening or permanent injury, Mr. Brazier's counsel in the district court asked only for a... recommended only a three-level enhancement and not a two-level enhancement. That does appear to be what counsel said. You would need a two-level reduction in order to affect the guideline. That's correct, Your Honor. We would need a two-level reduction. Is that a problem since you're asking for relief that was not asked for in the district court? I don't think it's a problem, Your Honor, because first, the government doesn't argue that this court's review should be plain error. It has therefore waived that opportunity and second... Well, we also sometimes feel some obligation to defend the work of district judges from unwarranted attacks. That's understandable, Your Honor, but that obligation shouldn't apply here because the district court appears to have interpreted Mr. Brazier's counsel's challenge as asking for a two- or three-level enhancement. That's at page 22 of the supplemental appendix. That's how the district court characterized the issue and therefore the district court considered that and passed on it. Thank you. On these issues, I know you're arguing for de novo review, but have we ever reversed a district court's application of this enhancement depending on degrees of injury? I haven't found where there's been a reversal, but there have been several courts that have affirmed application of the serious enhancement for gunshot wounds. Right. But this seems to me like an intensely fact-specific kind of question where we would defer an awful lot to the district judge who has tried the case and lived with the case for a long time. I agree, Your Honor, that that should have been the inquiry the district court conducted, but that's not the inquiry it conducted here. The district court looked only to the guideline definition that says denial of medical care and decided that was sufficient and did not engage in a further factual inquiry as to whether the injury was life-threatening, and that's what the district court should do on remand. This court should not engage in that factual inquiry in the first instance. Did Mr. Brazier offer any of his own evidence on this question? No, he did not because the government didn't even argue that denial of medical care was sufficient. The court moved to that and said it and said the enhancement applies. If there are no further questions at this time, I'd like to reserve the right to... Judge Rovner, did you get your question answered? I thought you were going to discuss restitution. So did I. I do plan to, Your Honor. I'd like to on rebuttal. We'd like to hear it so that the government has an opportunity to respond to it. You're the appellant. Yes, Your Honor. So I'll start out. You know, typically a judge can't predict what resources, if any, a defendant may have when he's released from prison. So why isn't it appropriate to impose the restitution obligation just in case a defendant does win the lottery or his uncle dies and he inherits money or does some sort of good work once he's out of prison? It's inappropriate because in the discretionary restitution scheme, Congress requires that district courts give consideration to a defendant's ability to pay, and this district court said several times in the record that Mr. Brazier has no ability to pay and has no ability even to pay a fine on quote, the most generous of installment payment schedules, and that no one could pretend that Mr. Brazier could pay this restitution order now or when he gets out. But nevertheless, the court imposed restitution on the extremely remote possibility that Mr. Brazier might win the lottery or have an idea with great market success when he leaves prison. If that's the standard, Your Honor, that transforms what Congress intended to be a discretionary restitution scheme into a mandatory one. Is it your position, Ms. Smith, that the discretionary decision is an all-or-nothing one for restitution? That is, if the court exercises discretion to say there are very limited resources here, I either have to impose no restitution or full restitution. That's correct, Your Honor. That seems very odd. That is the statutory scheme that Congress imposed. As you interpret it. Yes, Your Honor. Under 3663, the court must consider defendants resources in deciding whether to impose restitution, but if it decides to impose restitution, it has no discretion over the amount to impose. But it does have discretion to impose a schedule with only nominal payments if that's all the defendant can make. That's right, Your Honor. That seems discordant. I agree, Your Honor, that it does. But I think there's a way to read that section covering nominal payments that makes some sense. That section distinguishes between a present and a future ability to pay. It says if there's no present ability, if there's no ability to pay any amount of restitution, present tense, or if there's no ability in the foreseeable future to pay full restitution under a reasonable payment schedule that would get it paid, the court can impose nominal payments. That suggests that there might be some ability to make future nominal payments. But the district court here found that even under an installment schedule, this defendant couldn't make payments, and it nevertheless imposed restitution. You know, you're asking us to apply liability for the restitution obligation, but even if Mr. Bracer was the least involved, wasn't he nonetheless directly where it counts, namely his house, where they took Mr. Harris? He certainly participated in the beating of Mr. Harris. I'm not sure why it would be an abusive discretion to make the liability for restitution adjoints and several. It was an abusive discretion, Your Honor, because while this district court did recognize that Mr. Bracer's involvement was serious, it described Mr. Bracer as having, quote, the least serious involvement of the three. It described Mr. Bracer's involvement as, quote, not as significant as Mr. Fields. It said further that all agree that Mr. Bracer was not as involved as Mr. Fields and Mr. Mzembe. The district court explained that Mr. Bracer didn't choose Mr. Harris as the target. He didn't shoot Mr. Harris. He doesn't appear to have been directly involved in the ransom negotiations or the collection. And nevertheless, Mr. Harris, we don't know who did that, do we? I'm sorry, Your Honor. It was an accident. We don't know who shot Mr. Harris, do we or do we? We know that it wasn't Mr. Bracer, Your Honor. Mr. Bracer's jury acquitted him of the 924 C charge, which means they found he never possessed the gun that shot Mr. Harris. And the district court found on the record that Mr. Bracer didn't shoot Mr. Harris. Can I ask you about the prospect of mandatory restitution here? Because under Section 875, the Ransom Demand Statute and our opinion in Curitin, if I read your brief correctly, your hypothesis is that a ransom demand might not be a threat of violence because the kidnappers might intend to be threatening non-violence, but only to keep the victim alive and well forever. That's correct, Your Honor. And that is, our reading is that because of the elements of 875A. And can you direct us to any kidnapping case where that was the threat? Pay us or we'll keep this person forever in good health. I don't have a case in mind, Your Honor, but I know that that conduct would be covered under the statute based on its elements. And as Ms. Newman said, this court takes a categorical approach in determining whether something is a crime of violence. Ordinarily, we also though pay some attention to reality. Is there any incident you can tell me about where that has been a ransom demand has been backed up by that kind of threat? I could only come up with a hypothetical at this point, Your Honor. But the Supreme Court has also recognized that 875A would not be covered by the Force Clause in 16A. In passing and without exploring the comment. That's correct, Your Honor. But its reading is in line also with Black's Law Dictionary, which notes that making a ransom demand is defined without reference to any physical force or attempted or threatened use of physical force. When you responded that you were asked about the remand, the limited remand, you said remand for sentencing. What do you anticipate will occur on a remand for sentencing? So we would like this court to vacate the four level enhancement, and we think that a two level enhancement for serious bodily injury is appropriate. That would make Mr. Brazier's guidelines range at defense level 42, which corresponds to 360 months to life. That's a lower range than he had before, which was just life. And it would be against that backdrop the district court would impose a sentence. And here evidence with regard to what the sentence should be? I'm sorry, Your Honor. And here evidence with regard to what the sentence should be. Yes, Your Honor. No further questions. I'll reserve the balance of my time. May it please the court. Good morning, Your Honors. Nathaniel Whalen here on behalf of the United States of America. I'd like to start with the sensing enhancement. And Judge Hamilton, we agree with you that this is an intensely fact specific kind of question as to whether a injury amounts to life threatening or permanent bodily injury. You know, this guideline has basically three buckets, serious injury, permanent or life threatening, and then somewhere in between. So it's asking the district court to determine the severity of an injury. And that's something, that's a factual finding that these courts make on a regular basis. And it's one this court should defer to. Judge Hamilton, we've also not found a case in which this court has reversed the application of this enhancement. And in this case, the district court heard actually three times Mr. Harris testify. It reviewed the evidence three times. It heard testimony from the sister about what state he was in, from that passerby who found him in the alley. It reviewed pictures of him. And so the court was in a good position to classify the severity of the injury. It found that it rose to the level of life threatening. And this court should affirm, since that was not clearly erroneous. Mr. Harris had a guess. Looking at the guideline, Mr. Whelan, looking at the guideline definitions of serious versus life threatening or permanent injury, the injury to Mr. Harris looks more like a serious bodily injury to me. To the extent you're relying on the denial of medical care as a form of life threatening maltreatment, then is any case in which a victim is seriously injured but not immediately given medical care a case in which the four level enhancement is called for? And what distinguishes the maltreatment here from the sort of maltreatment that is inherent in inflicting serious injury on any victim? Let me answer. I think there are a bunch of questions in there, Your Honor, if I can take them in order. There have been very few cases that have interpreted this maltreatment portion of the guideline. I think between the two parties, we've probably cited all of them in the federal register that we could find. I think Morgan, the Ninth Circuit case, is probably an example of where the injury might initially be serious, but then because of the defendant's actions and the defendant's maltreatment, the district court found that it rose to the level of life threatening. And that's really what that maltreatment example is about. It's about a case where an injury because of the defendant's treatment, because of the conditions in which the victim held, does rise to the level of life threatening. In this instance. Now, in terms of whether this is a serious bodily injury versus life threatening bodily injury, Your Honor, Judge Miller found that it qualified as a life threatening bodily injury. We think that there's ample evidence to support that. Mr. Harris has been pistol whipped by this point. He's been kicked. He's been shot in the arm. He has a gash on his head requiring staples. As Your Honor pointed out, the district court found he's bleeding profusely. He's dazed from blood loss. He's been duct taped. He's been held for about five hours. And then he is, as I think Your Honor said, dumped in an unfamiliar alley only when the defendants thought he was on the verge of death. So they thought that this was life threatening at this point and they chose to dump him and leave him to die. It was well within the court's discretion to find that this rose to the level of life threatening. But would you agree that it's problematic to rely on the permanent nature of Mr. Harris' injuries when that information was not before Judge Miller at the time Mr. Brazier was sentenced? Shouldn't Mr. Brazier have had the opportunity to respond to that particular information? Absolutely, Your Honor. And we're not advocating that this court affirm based on the later submitted affidavit. What our position was in terms of how this court could affirm on an alternate basis was that the evidence in front of Judge Miller at the time Mr. Brazier was sentenced is materially similar to that later submitted in the affidavit that Judge Miller relied upon. In terms of whether Mr. Brazier had a chance to rebut it, he did, Your Honor, in the restitution context, that affidavit was there for restitution and part of the restitution was based on lost wages. So if Mr. Brazier did think that the injury wasn't really as serious as Mr. Harris was claiming, he did have a chance then. But we're not asking that this court affirm based on the affidavit. We're asking absolutely that this court affirm on the information in front of Judge Miller at the time Mr. Brazier was sentenced. In terms of some of the other questions that Your Honor's asked, we do think that on a remand, this information is going to all come in. And I think that kind of points out where we are in terms of this guideline, that by the time we get to Mr. Fields, the court has this affidavit in front of it and finds that Mr. Fields had a permanent injury. I would fully expect the district court to make that finding on remand and that information would be in front of him. But we think it wasn't clear error to impose the enhancement in the first instance. Mr. Whalen, how did the Elaine error occur in this case? Your Honor, it was absolutely an error on our fault, on our behalf. It was an issue. I think what happened in this case is that the AUSA relied on, let me take a step back and say, it's absolutely our responsibility to make sure the jury instructions are right and we embrace that responsibility. I think the AUSA relied on the pattern seven circuit instructions at this point, which are pre-Elaine, and so discharge wasn't submitted to the jury. Now, we should have caught that. We didn't. And so it was an error by the government. Nobody did. Nobody. There was no objection by the defense. That's correct. District judge didn't pick it up. You guys didn't pick it up. So that's correct. Your Honor, I thought we'd worked through most of these problems by now, but we thought we had to, Your Honor. And we do acknowledge that there was an error in this case. Since Your Honor is there, I would briefly say that I do think any error in this case is harmless. Counsel said that Armour decided the requisite mens rea for discharge. That's not right. Armour was not a discharge case. Rosemond was a discharge case. Christopher Dean, the earlier Supreme Court opinion, was an aiding and abetting discharge case. And what they said in that instance is that you don't have to intend that the discharge occur. It, all that matters is that it's an accident. We think that that's the correct standard. And there's no dispute here that the gun was discharged. We do acknowledge that asking this particular panel to overturn Cardenia is probably a tough road to hoe. But in terms of your question, Judge Rovner, we do think it's appropriate to hold off in light of DiMaia. I understand Your Honors are probably as anxious as we are to get a decision on DiMaia, which we expect is going to resolve the 16B issue. There are various cert petitions up there for 924C as well, the Jackson case, the Cardenia case. And just like Your Honors, we're hoping that they're going to resolve the 924C issue as well. I don't think there's any chance that any of these defendants are going to get out by the end of June, which is when DiMaia is going to come out. We would also, like Defense Counsel, be happy to submit supplemental briefing within 30 days or whatever Your Honors would prefer about the effect of DiMaia on this case. Because I do think, at the very least, we hope it resolves the Mandatory Victim Restitution Act issue and whether that applies in this case and whether 16B is unconstitutional. We also do hope that it's going to resolve the 924C. And so we would request that this court do hold this decision in light of DiMaia. I guess if this court were so inclined to resolve Mr. Brazier's issues, which don't involve DiMaia, it could sever his appeal since he only deals with the restitution and serious or permanent bodily injury enhancement. And if I can just move to the restitution issue, Judge Hamilton, in answer to your question, this court in United States v. Day found that under the Discretionary Restitution Act, when the court decides to order restitution, it is required to order the entire amount. And that's because of these 1996 amendments to the Mandatory Victim Restitution Act, the Discretionary Restitution Act. And the interplay between those two. Defendants haven't asked this court to overturn Day. I don't think there's any good reason to overturn Day. But I do think Day is important in this case also because it overruled the line of cases or the line of reasoning that defendants rely upon that a restitution order that's, quote, a sham or impossible to fulfill is reversible. That's no longer the law. And as this court stated in Day, what the Discretionary Restitution Act requires, and that's the act I'm talking about right now, is that the district court considered the defendant's financial situations. There's no dispute here that the court did that. The court ultimately found that, yes, these defendants were indigent at this point, but it chose, rather than let the defendants get off scot-free in terms of restitution, that it was going to say, if you make any money down the road, you're going to have to pay back the lost wages and the out-of-pocket medical expenses for the man you shot, beat, pistol whipped, and tortured for five hours. That's not an abuse of discretion. The defendants have been pointed to any case in which this court or any other court has said indigency is a complete defense to restitution. And it isn't. The nominal payment section of 18 U.S.C. 3664 talks about how to apportion payments for an indigent defendant. Now, we aren't talking about the payment schedule at this point, but if indigency were a complete defense to restitution, there's no reason to have that section in the Restitution Act. It just doesn't make sense. The Restitution Act on its face acknowledges that there are going to be some indigent defendants that the court can order restitution for. The district court in this case chose to order restitution. And I think it's important to note how it structured the restitution payments. It prioritized Mr. Harris's out-of-pocket payments. The court acknowledged these defendants probably can't pay $193,000 when all's said and done, but it hoped that they would take advantage of the educational opportunities in jail and be able to come out and help Mr. Harris recover some of what he lost as a result of their actions. That's not an abusive discretion. In terms of the apportionment argument, your honors, that also is not an abusive discretion. Mr. Brazier was- I mean, with 666 months, you do the math. How old will these people be? One I know got 666, one got 500 and something. Your honor, Mr. Fields got 636, Mr. Mzenbe got 528, and Mr. Brazier got 444. They will be, I think it's somewhere in their 70s when they get out. Oh, yeah. Youngsters, never mind. Your honor, certainly anyone in their 70s is capable of earning a very good income and being a productive member of society. We've embraced that, and I think- If you have life and point. Well, I think part of the problem with Mr. Brazier's argument is that he's arguing for apportionment, and I think that necessarily requires some sort of tacit acknowledgement that he is going to be able to make money down the road. And otherwise, why would you care about apportionment? And I think the district court was within its discretion to consider that. Your honor, if I can briefly touch on Mr. Fields and Mr. Mzenbe's requests. Let me ask you one more question. The district court ordered Fields to pay restitution under the Mandatory Act, and his opening brief didn't, Fields didn't address that, whether we could affirm the district court's award under the Victim Act instead. Is there a superior to presume that we could, but I think we should address that. Your honor, I think the appropriate course in this case would, well, I guess it depends on some of the questions Judge Hamilton was asking about whether 875A qualifies as a crime of violence. That's a higher risk strategy for this court. That is a higher risk strategy for this court, especially given we think the district court's actions in this case were perfectly appropriate. So I think the court could affirm under the Mandatory Victim Restitution Act. I think, were this court so inclined to affirm Mzenbe and Brazier's sentences under the Discretionary Act, I think it probably would be appropriate to affirm Fields on that ground. I don't think there's any real practical difference. We are conceding that Mr. Fields' restitution should be reduced by about $3,000 because of a technical error. So I guess to the extent that this court's going to do anything with Mr. Fields' restitution, that's what it would be. I'm unaware of any difference in terms of whether this court says this restitution's under the Mandatory Victim Act or the Discretionary Act. I don't know of any practical difference between the two. Let me, if I may, just briefly discuss Mr. Fields and the Zembe's requests for a limited resentencing. Where I guess this court would restructure the district court's sentences by taking off the 924C. I think Mr. Mzembe's waived any argument along those lines by raising it for the first time here. And so we would say that that issue is in front of this court. Mr. Fields hasn't pointed to a single case where this court has adopted that remedy. And the defendant in Curitin, the first Curitin case we cite, of the three, was asked for that same thing. He asked this court to strike one of his 924C convictions and affirm the sentence otherwise. This court rejected that overture. He hasn't pointed to any reason why this court should treat this case any differently. And so we suggest that the proper remedy were this court to reverse the 924C convictions would be a full resentencing. I know there's a lot there, your honors. I'm happy to answer any other questions this court might have. Otherwise, we would ask this court issue a limited remand for Mr. Fields and Mzembe, affirm their 924C convictions, alter Mr. Fields' restitution order. I know it's a long ask, your honor. And otherwise, affirm Mr. Brasier's brazier sentence in full. Thank you, your honors. Thank you. Your honors, Armour does apply here. Armour held that to satisfy an accomplice liability instruction, there has to be advanced knowledge of all of the elements. It did not matter that the statutory definition of brandishing requires specific intent. Accomplice liability requires specific intent. And that doesn't change if the principal offense does not require specific intent, like discharging. Dean was not an aiding and abetting case, the earlier Dean case. The defendant there admitted that he was the armed robber. So he was treated as the principal defendant, the principal actor. So there was no need to consider accomplice liability in that case. And just to be clear, Mr. Brasier was acquitted. But in the other two defendants' cases, there was no evidence as to who fired the gun. All three had masks, and all three had guns, according to the evidence in those cases. Thank you. Thank you. Your honors, I know I exceeded my time. If I might have a minute just to respond. Certainly. I'd like to begin by being responsive to your question about remand. I want to clarify that we are seeking a full resentencing. We're not seeking a full remand that might encompass a new determination on liability. Second, I'd like to say that the government. What you, a remand for full resentencing. Yes, your honor. The government. What would you anticipate would be excluded from that, then? Nothing as it relates to Mr. Brasier's sentence. It would be the vacatur of the enhancement, and then the district court would consider whatever evidence the government and Mr. Brasier brought in as to what enhancements apply and what the sentence should be. The government says that the district court decided on the basis of the factual record that the injury was life-threatening, and that's incorrect, your honors. Again, the district court looked only to the guidelines definition. The government asked this court to take a tour through the trial record and engage in a factual inquiry in the first instance, and that would be inappropriate. The government also says that Mr. Brasier had an opportunity to rebut the permanence finding at his restitution hearing, but Mr. Brasier did not have an opportunity to rebut the allegation that the injury was permanent at his sentencing, and that would be a very different inquiry, and Mr. Brasier is entitled to that opportunity. The government also says that the Ninth Circuit's decision in Morgan, the district court found the injury serious, but on appeal, the Ninth Circuit found that the record didn't support a conclusion that the injury was life-threatening. And I'll just close with a point on restitution, which is that this court's decision in Day is not controlling here, while restitution was discretionary in that case, the defendant agreed to pay restitution in its plea agreement, so whether to impose restitution was not before the district court, and therefore the district court had no discretion over the amount to impose. Thank you, Your Honors. Thank you, Counsel.